IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND and ARTHUR H. BUNTE, JR., Trustee, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 11 C 7626 |
| E & L DEVELOPMENT, INC., | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The Central States, Southeast and Southwest Areas Pension Fund and its trustee (collectively, the Fund) has sued E & L Development, Inc. under the Employee Retirement Income Security Act of 1974 (ERISA), as amended by the Multiemployer Pension Plan Amendments of 1980 (MPPAA). The Fund seeks to collect the amount it assessed against E & L as "withdrawal liability" when E & L withdrew from participation in the Fund, together with interest, liquidated damages for nonpayment, and attorney's fees. Both sides have filed motions for summary judgment. For the reasons stated below, the Court grants the Fund's motion and denies E & L's motion.

### Facts

The Fund is a multiemployer pension plan. E & L is a Michigan corporation that was subject to a collective bargaining agreement that required contributions to the Fund on behalf of some of its employees. As of October 4, 2008, E & L permanently ceased

contributing to the Fund. This constituted a "complete withdrawal" as defined in 29 U.S.C. § 1383.

On or around August 12, 2010, the Fund notified E & L that the principal amount of withdrawal liability incurred was $1,076,391.08. It notified E & L that it could discharge its liability in a lump sum or in monthly payments of $8,718.08, beginning in September 2010 and ending in May 2028. On or around September 17, 2010, the Fund advised E & L that payment was past due. The Fund stated that payment was due within sixty days and that if it did not receive payment within that time, it would hold E & L in default and the entire assessed amount of E & L's withdrawal liability would be due. E & L made no payments.

The Fund filed this suit in October 2011. It seeks $1,076,391.08 in withdrawal liability; prejudgment interest; an amount equal to the greater of liquidated damages of twenty percent of the unpaid withdrawal liability or interest on the unpaid withdrawal liability; and attorney's fees and costs, pursuant to 29 U.S.C. §§ 1132(g)(2) & 1451(b).

The Fund has moved for summary judgment, seeking all of the relief just described, including liquidated damages of $215,278.22, representing twenty percent of the entire withdrawal liability. E & L has cross-moved for partial summary judgment. It contends that the Fund is not entitled to liquidated damages totaling twenty percent of the entire withdrawal assessment, but only twenty percent of the total of the unpaid interim payments. The Fund also asks the Court to retain jurisdiction over the case in connection with the Fund's collection of the judgment.

E&L does not contest the principal amount of the withdrawal liability that it owes. Nor does it contest the Fund's entitlement to interest, attorney's fees, and costs. The

2

Fund is therefore entitled to summary judgment on those points. The principal amount of the withdrawal liability is $1,076,391.08. Interest must be calculated, a matter that the Court will leave to the parties to attempt to work out in the first instance. Attorney's fees and costs will be assessed following entry of judgment, in accordance with procedures typically followed. In this decision, the Court considers only the two issues raised in the parties' summary judgment motions.

## Discussion

Summary judgment may be granted where the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999); Fed. R. Civ. P. 56(c). In considering a summary judgment motion, a court construes the facts in the light most favorable to the non-moving party and draws reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**1.   Liquidated damages**

When a pension plan like the Fund sues to recover unpaid withdrawal liability, it is entitled to recover the amount of the unpaid contributions; interest on the unpaid contributions; attorney's fees and costs; and "an amount equal to the greater of interest on the unpaid contributions, or liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law)" of "the amount determined by the court under subparagraph (A)," namely the unpaid contributions. 29 U.S.C. §§ 1132(g)(2)(A)-(D) &

3

1451(b).

The Fund contends that the liquidated damages penalty referred to in section 1132(g)(2)(C)(ii) as twenty percent of "unpaid contributions" means twenty percent of the unpaid withdrawal liability. It further contends that the unpaid withdrawal liability is the total withdrawal liability, not just the sum of the unpaid interim payments. The Fund reasons that awarding liquidated damages calculated against the entire withdrawal liability owed is consistent with the legislative intent behind the passage of MPPAA – providing employers a disincentive to withdrawal from multiemployer pension plans. If the Fund is correct, E & L owes $215,278.22 in liquidated damages.

E & L argues that the liquidated damages it owes amount to twenty percent of the unpaid interim payments of $166,368.18, or about $33,273.60. It contends that liquidated damages are not appropriately imposed on installment payments that are not yet due. E & L contends that because it has already withdrawn from the Fund, the legislative intent of discouraging employers from withdrawing from pension plans is inapplicable.

Under ERISA's statutory procedure for challenging liability assessments, employers are subject to a "pay now, dispute later" scheme, under which an employer must pay monthly withdrawal liability payments once it has received notice, regardless of the pendency of a challenge to the assessed liability. *Chi. Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. El Paso CGP Co.*, 525 F.3d 591, 595 (7th Cir. 2008); *Central States, Southeast and Southwest Areas Pension Fund, et al. v. Lady Baltimore Foods, Inc.*, 960 F.2d 1339, 1347 (7th Cir. 1992). Liquidated damages are imposed as a penalty against the employer for "deciding not to

4

make installment payments until being ordered to do so by a court." *Chi. Truck Drivers, Helpers and Warehouse Union (Independent) Pension Fund v. Century Motor Freight, Inc.*, 125 F.3d 526, 534 (7th Cir. 1997).

Liquidated damages are owed, however, "only on delinquent payments, not on the portions of the withdrawal liability that have not yet come due." *El Paso CGP Co.*, 525 F.3d at 604; *Century Motor Freight*, 125 F.3d at 534. The question in this case, therefore, is what was and is due. According to the Fund, the entire withdrawal liability was and is due, because it accelerated the withdrawal liability when E & L did not make its interim payments. E & L argues that this was inappropriate and that only the amounts of the unpaid interim payments were due. If there was no acceleration, or if the Fund did not jump through all of the correct hoops to accelerate the liability, liquidated damages cannot be assessed on the entire withdrawal liability amount. *Century Motor Freight*, 125 F.3d at 534; *see El Paso CGP Co.*, 525 F.3d at 604.

Under the MPPAA, once an employer withdraws from a pension plan, the plan sponsor must notify the employer of the amount of its liability and the schedule for liability payments, and it must demand payment in accordance with the schedule. 29 U.S.C. § 1399(b)(1). The statute permits the withdrawing employer to seek review of its liability and payment schedule, *id.* § 1399(b)(2)(A), but E & L did not do that. The employer must make payments in accordance with the schedule set by the plan sponsor starting no later than sixty days after the demand for payment, even if it has sought further review or otherwise challenged the assessment or the payment schedule. *Id.* § 1399(c)(2).

The statute permits a plan sponsor to accelerate the outstanding amount due in the event of a default. Specifically, the statute provides that

> [i]n the event of a default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made. For purposes of this section, the term "default" means–
>
> (A) the failure of an employer to make, when due, any payment under this section, if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure, and
>
> (B) any other event defined in rules adopted by the plan which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability.

*Id.* § 1399(c)(5).

In this case, the Fund met the statute's requirements for accelerating the total amount due. It is undisputed that the Fund notified E & L in writing of its failure to make scheduled payments, and it is likewise undisputed that E & L did not cure this failure within sixty days. The Fund thus unquestionably had the right under section 1399(c)(5) to require immediate payment of the total withdrawal liability.

"Acceleration under the statute is permissive, not mandatory," and it does not happen automatically: the pension fund has to follow the statutory requirements and then declare an acceleration. *El Paso CGP Co.*, 525 F.3d at 602. But the Fund did all of that here. E & L seems to contend that because acceleration is not mandatory, the Court can disallow it or disregard it. *See* Def.'s Reply Brief in Supp. of Mot. for Partial Summ. J. and in Opp. to Pls.' Mot. for Summ. J. at 3. It cites no case to support this proposition, and the Court is unaware of any controlling authority that so holds. The fact that, as the Seventh Circuit said in *El Paso CGP Co.*, acceleration might not always

6

be in a pension fund's interest, *see id.*, does not mean that the Court can overrule a fund's procedurally appropriate decision to accelerate in a particular case. Rather, the Seventh Circuit was simply explaining why the statute does not make acceleration automatic.

E & L also says that it is not stalling but rather is simply unable to pay. It contends that given the circumstances, acceleration of the total amount due is unfair and an overreach by the Fund. Reasonable minds could differ on this. The other side of it is that if a withdrawing employer is not paying because it says it cannot, that is arguably a good reason to accelerate the total amount of the unpaid debt, rather than forcing the Fund, as a creditor, to make repeated liquidated damages assessments and, perhaps, file repeated lawsuits. One way or another, however, E & L cites no authority for the proposition that a claim of unfairness gives rise to an appropriate legal basis to disregard or overturn a pension fund's decision to declare a default, accelerate the total amount due, and sue to collect the withdrawing employer's entire liability.

For the foregoing reasons, the Court grants the Fund's motion for summary judgment and denies E & L's motion for partial summary judgment. The Court imposes liquidated damages equal to twenty percent of the total (accelerated) withdrawal liability.

**2.     Retention of jurisdiction**

E & L next argues this Court should retain authority over the case through final collection of its judgment. In effect, E & L seems to want the Court to prevent the Fund from attempting to collect in other jurisdictions from "unrelated parties," a term that E & L seems to define as any person or entity other than those in the same "controlled group" as E & L – a term that E & L does not attempt to define. *See* Brief in Support of

7

Def.'s Mot. for Partial Summ. J. at 5-6.  E & L appears to be concerned that the Fund will attempt to overreach in its collection efforts.

First of all, there is no need for the Court to do anything to retain jurisdiction to enforce its judgment.  Federal Rule of Civil Procedure 69(a) already provides that authority.

Second, E & L's concern that the Fund will initiate abusive collection efforts in other courts is premature, as nothing of the kind has yet occurred in this case.  In any event, any person or entity that the Fund might end up suing to attempt to satisfy its judgment is presumably in a position to protect itself, and there is no reason to believe that this Court, or federal or state courts in other jurisdictions, cannot effectively prevent abusive litigation if it occurs.  E & L is not entitled to prospective relief from this Court to shape the Fund's collection efforts.

## Conclusion

For the reasons stated above, the Court grants plaintiffs' motion for summary judgment [docket no. 22] and denies defendant's motion for partial summary judgment [docket no. 25].  The amount of liquidated damages due is $215,278.22.  The Court directs counsel to attempt to agree on a calculation of interest.  They are to provide a draft judgment order for the Court's consideration by no later than August 22, 2012.  The case is set for a status hearing on August 29, 2012 at 9:30 a.m. for the purpose of entering a final judgment and setting a schedule for briefing regarding attorney's fees and costs.

_____
MATTHEW F. KENNELLY
Date:  August 15, 2012                                 United States District Judge